IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-00189-01-CR-W-DW |
| ) | |
| TORRENCE L. ROLLINS, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant's Motion to Suppress Evidence (doc #29). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On June 29, 2010, the Grand Jury returned a one-count indictment against defendant Rollins. The indictment charges that on April 1, 2008, defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a 9mm semi-automatic pistol.

A suppression hearing was scheduled for November 23, 2010. On November 23, the Court advised the parties that on the basis of the pleadings filed, it did not appear that an evidentiary hearing was necessary as defendant was challenging only the probable cause for the search warrant. "In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit." United States v. Stanert, 762 F.2d 775, 778 (9th Cir. 1985). The Court advised that while defendant's motion might be construed as requesting a Franks hearing, on the basis of the pleadings filed, defendant was not entitled to a hearing under Franks v. Delaware, 438 U.S. 154 (1978).[1] Defendant was given an

---
[1] "In order to be entitled to a hearing under Franks the defendant must make a 'substantial preliminary showing' of a false or reckless statement or omission and must also show that the alleged false statement or omission was necessary to the probable cause determination." United States v. Crissler, 539 F.3d 831, 833 (8th Cir. 2008)(quoting United States v. Milton, 153 F.3d 891, 896 (8th Cir. 1998)). "A mere allegation standing alone, without an offer of proof in the

opportunity to file any additional briefs, affidavits, or requests for a hearing on or before December 7, 2010. On December 7, 2010, defense counsel notified the Court that he had been unable to obtain an affidavit or to have a witness available to testify in support of the motion to suppress. The motion will, therefore, be ruled based on the "information and circumstances contained within the four corners of the underlying affidavit."

## II. THE AFFIDAVIT

The Affidavit, given in support of a search warrant for 7423 Olive Street, Kansas City, Missouri provides in part:

> On 03-14-2008 a detective with the Kansas City Missouri Police Department, Street Narcotics Unit received numerous community complaints and intelligence information from district police officers regarding narcotic sales by several people standing in front of 5309 Wabash Avenue, Kansas City, Jackson County Missouri. On 03-14-2008 at approximately 1330 hours, a detective with the Kansas City, Missouri Police Department Street Narcotics Unit responded to 5309 Wabash Avenue, and made contact with a black male sitting in a chair in the front yard of 5309 Wabash Avenue, who will now be referred to as Suspect #1. The detective told Suspect #1 he/she was trying to get "fifty," referring to fifty ($50) dollars worth of crack cocaine. Suspect #1 entered the detective's vehicle and advised the detective to drive to 7423 Olive Street, Kansas City, Jackson County Missouri to obtain the narcotics.
>
> Upon arrival to the residence Suspect #1 told the detective, "They sell weight at this house so you can't come inside with me because he be tripping because he don't want to get kicked in." The detective agreed to stay inside the vehicle and parked to the south of 7423 Olive Street and handed Suspect #1 fifty ($50) dollars of pre-recorded Street Narcotics Unit buy money. Suspect #1 exited the detective's vehicle and entered the open garage of 7423 Olive Street. Approximately five minutes later Suspect #1 exited the garage door and entered the detective's vehicle and handed the detective two individually wrapped beige rock like substances purported to be crack cocaine. The detective drove Suspect #1 back to 5309 Wabash Avenue, were [sic] Suspect #1 gave the detective a cell phone number to arrange future narcotics transactions then exited the detectives vehicle.
>
> On 03-18-2008 at approximately 1430 hours the aforementioned detective made contact with Suspect #1 by cell phone and told Suspect #1, he/she wanted to get, "fifty," referring to fifty ($50) collars worth of crack cocaine. Suspect #1 advised the detective to respond to 5309 Wabash Avenue to make contact with him. The detective pulled in front of 5309 Wabash Avenue and observed Suspect #1 exit the front door and enter the passenger side of the detective's vehicle. Suspect #1 told the

---

form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing [under Franks]." United States v. Mathison, 157 F.3d 541, 548 (8th Cir. 1998), cert. denied, 525 U.S. 1165 (1999).

detective, "We have to go back down to 75th and Olive again." Suspect #1 pulled out his cell and stated, "We on the way to get that" and then hung up the phone. The detective drove to 7423 Olive Street, and handed Suspect #1 fifty ($50) dollars of pre-recorded Street Narcotics United Buy money. Suspect #1 exited the detective's vehicle and walked to the front door of 7423 Olive Street, and knocked one time on the screen door and then entered. Approximately three minutes later Suspect #1 exited the front door of the residence and re-entered the detective's vehicle. Suspect #1 handed the detective one individually wrapped beige rock like substance purported to be crack cocaine and stated, "He had a big ass gun like a forty-five (45) and grave me my dope and then pointed the gun at me and told me to get the fuck out his house." The detective drove Suspect #1 back to 5309 Wabash Avenue and Suspect #1 exited the detective's vehicle and the detective left the area.

Each beige rock like substance purchased with a total weight of 1.2 grams was field-tested utilizing the Scott Reagent System test kit. Each substance tested positive to the presence of cocaine base. The evidence was packaged, sealed, signed, dated, and forwarded to the Regional Crime Lab for analysis.

On 04/01/2008 at 1900 hours, the aforementioned detective responded to 7423 Olive Street, Kansas City, Jackson County, Missouri to attempt a narcotics purchase.

Upon arrival the aforementioned detective knocked on the front door of 7423 Olive Street, and made contact with a black female who let the aforementioned detective inside the residence and pointed to the kitchen. The aforementioned detective walked into the kitchen and observed two black males sitting at the table playing cards. The aforementioned detective also observed money sitting on the table and what the aforementioned detective immediately recognized to be crack cocaine wrapped in a clear plastic bag and also sitting on the table next to the two black males. After the two black males finished their card game, one of the black males turned to the detective and became belligerent by yelling at the detective and told the detective, "Get the fuck out my house." The detective exited the residence and left the area.

During the course of the investigation, the detective discovered the address has three recent DRAGNET complains on the address 7423 Olive Street, Kansas City, Jackson County, Missouri for narcotics sales.

(Attachment to Motion to Suppress Evidence (doc #29-1))

III. DISCUSSION

Defendant seeks to suppress all evidence seized as a result of a search warrant executed at 7423 Olive Street, Kansas City, Missouri on April 1, 2008. (Motion to Suppress Evidence (doc #29) at 1) In support of the motion, defendant argues: (1) the statements made in the affidavit given in support of the search warrant fail to meet requirements of probable cause set forth in Section 542.276 R.S.Mo.; (2) the statements made in the affidavit fail to rise to a level of reasonable suspicion required to detain a suspect pursuant to Terry v. Ohio, 392 U.S. 1 (1968); (3) there was

no allegation in the affidavit that Suspect #1 was a trustworthy, reliable confidential informant; (4) there was no proof that Suspect #1 did not already have the narcotics on his person prior to entering the residence at 7423 Olive Street because the detective did not search Suspect #1 prior to him entering the residence at 7423 Olive Street; and (5) it is incredulous that the detective, a stranger, would have been allowed to enter the residence at 7423 Olive Street, stand close enough to recognize crack cocaine on the table and stand there long enough for a card game to be finished. The Court will address each of defendant's arguments.

    A.    Section 542.276, R.S.Mo.

Defendant sets forth the following as support for his argument that the search warrant was invalid because it did not comply with the requirements of section 542.276, R.S.Mo.:

> Section 542.276 R.S.MO (1989) outlines the requirements for the contents of an appropriate application/affidavit for a search warrant to be issued in the State of Missouri.
>
> Section 542.276.5 provides that the affidavit must state facts sufficient to show probable cause for the issuance to [sic] the search warrant. The statements made in this application/affidavit for a search warrant fails [sic] to meet requirements of probable cause in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

(Motion to Suppress Evidence (doc #29) at 2)

Defendant's reliance on an alleged violation of a state statute to invalidate the search warrant is erroneous. Federal, not state, law governs the admissibility of this evidence. See United States v. Hornbeck, 118 F.3d 615, 617 (8th Cir. 1997). "The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers." Id. (quoting Preston v. United States, 376 U.S. 364, 366 (1964)). The Hornbeck court went on to explain:

> In a federal prosecution, we evaluate a challenge to a search conducted by state authorities under federal Fourth amendment standards. ... A court must examine the legality of a search by state officers as if made by federal officers. We recently concluded in United States v. Moore, 956 F.2d 843, 847 (8th Cir. 1992), that "evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because *state* law was violated."

118 F.3d at 617.

B.     Reasonable Suspicion

Defendant next argues that the statements made in the affidavit fail to rise to a level of reasonable suspicion required to detain a suspect pursuant to Terry v. Ohio, 392 U.S. 1 (1968). (Motion to Suppress Evidence (doc #29) at 2-3)

The United States Supreme Court has set forth the following with respect to what is required for a valid search warrant:

> The Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." ... [T]his Court has interpreted [these words] to require only three things. First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense. Finally, "warrants must particularly describe the 'things to be seized,' " as well as the place to be searched.

Dalia v. United States, 441 U.S. 238, 255 (1979)(citations omitted). As set forth in Dalia, the affidavit must demonstrate that there is probable cause to believe that evidence of a crime will be found in the place to be searched. The "reasonable suspicion" standard contemplated in Terry v. Ohio is not the standard to be applied in reviewing search warrants.

C.     Probable Cause

Defendant argues that the statements made in the affidavit fail to meet requirements of probable cause. (Motion to Suppress Evidence (doc #29) at 2)

The Eighth Circuit Court of Appeals has set forth the following with respect to probable cause in a search warrant:

> "Probable cause to issue a search warrant exists when an affidavit ... in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." United States v. Davis, 471 F.3d 938, 946 (8th Cir. 2006)(quoting Illinois v. Gates, 462 U.S. 213, 238 ... (1983)). The determination of probable cause is made after considering the totality of the circumstances. United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir. 2007). After a judge has issued a search warrant upon a finding of probable cause, "that finding deserves great deference." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998)(citing Gates, 462 U.S. at 236 ...). Thus, when reviewing the sufficiency of the ... affidavit supporting a search warrant that was found by the issuing judge to provide probable cause, we give great deference to the issuing judge's finding. Id.

5

United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007).

Reviewing courts should not make a de novo determination of probable cause. Instead, the decision to issue a search warrant is to be upheld if supported by a substantial basis in the record. See Illinois v. Gates, 462 U.S. 213, 238-39 (1983). Deference should be given to determinations of probable cause by issuing judges. As stated by the Supreme Court in Gates:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed.

462 U.S. at 238-39.

On April 1, 2008, the issuing judge was presented with the following facts: On March 14 and 18, 2008, Suspect #1 took the undercover detective to the residence at 7423 Olive Street where Suspect #1 obtained crack cocaine for the undercover detective. On April 1, 2008, the undercover detective again went to the residence at 7423 Olive Street, this time without Suspect #1. The undercover detective was admitted into the residence by a female who pointed to the kitchen. The undercover detective walked into the kitchen and observed two males sitting at a table playing cards. On the table, the undercover detective observed a package the detective immediately recognized to be crack cocaine. During the course of the investigation, the detective discovered that there had been three recent complaints of narcotics sales from 7423 Olive Street.

Given the facts presented to the issuing judge, this Court finds that the issuing judge had a substantial basis for concluding that probable cause existed that contraband or evidence of a crime would be found within the residence at 7423 Olive Street.

### D. Alleged Deficiencies in the Affidavit

The remainder of defendant's arguments allege deficiencies in the affidavit given in support of the search warrant. Defendant argues there was no allegation in the affidavit that Suspect #1 was a trustworthy, reliable confidential informant; there was no proof that Suspect #1 did not already have the narcotics on his person prior to entering the residence at 7423 Olive Street because the

detective did not search Suspect #1 prior to him entering the residence at 7423 Olive Street; and it is incredulous that the detective, a stranger, would have been allowed to enter the residence at 7423 Olive Street, stand close enough to recognize crack cocaine on the table and stand there long enough for a card game to be finished.  (Motion to Suppress Evidence (doc #29) at 3-4)

With respect to the arguments pertaining to Suspect #1, the Court notes that Suspect #1 was not a confidential informant nor was he represented to be a confidential informant in the affidavit. A confidential informant knowingly and purposely provides tips to authorities.  See United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004).  A confidential informant chooses to cooperate with the government.  See United States v. Coles, 2007 WL 2916510, *7 (E.D. Pa. Oct. 5, 2007).  Suspect #1 had no idea he was assisting the government.  Suspect #1 thought he was selling crack cocaine to a customer, not an undercover officer.  The undercover officer could not search Suspect #1 without blowing his cover.

Finally, defendant's argument that it is incredulous that the detective saw what he claims in his affidavit to have seen must also fail.  The Eighth Circuit Court of Appeals has set forth the following with respect to warrant affidavits that are found to contain falsehoods:

> A facially valid warrant affidavit is constitutionally infirm if the defendant establishes that the affidavit includes deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause.  Franks v. Delaware, 438 U.S. 154, 171 (1978).[2]

United States v. Ketzeback, 358 F.3d 987, 990 (8th Cir. 2004)(footnote supplied).

Defendant has not met his burden of establishing by a preponderance of the evidence that the warrant affidavit contained a false statement made knowingly and intentionally or with reckless disregard for the truth.  In fact, defendant has presented no evidence to suggest that the affidavit contained a false statement.

---

[2]In Franks v. Delaware, 438 U.S. 154, 155-56 (1978), the Supreme Court held that if it is shown by a preponderance of the evidence that a warrant affidavit includes a false statement made knowingly and intentionally or with reckless disregard for the truth and if, with the affidavit's false material excluded, the affidavit is insufficient to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

### 3. The Leon Good Faith Exception

Even if probable cause did not exist for the warrant at issue (which this Court does not believe to be the case), the Leon good faith exception would support the admissibility of the evidence seized pursuant to the warrant since it appears that the officers executing the warrant were acting in "objectively reasonable reliance" on a warrant issued by a neutral judge. See United States v. Leon, 468 U.S. 897, 922 (1984); United States v. Murphy, 69 F.3d 237, 241 (8th Cir. 1995), cert. denied, 516 U.S. 1153 (1996).

The Eighth Circuit has set forth the following with respect to exceptions to good faith reliance:

> Ordinarily, a police officer cannot be expected to question a judge's probable cause determination. Suppression is an appropriate remedy if the judge, in issuing the warrant, was misled by information in the affidavit that the affiant knew or would have known it was false except for the affiant's reckless disregard for the truth. Evidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause.

Murphy, 69 F.3d at 241 (quoting United States v. Gibson, 928 F.2d 250, 253-54 (8th Cir. 1991)). Stated another way, there are four "exceptions" wherein reliance upon an invalid search warrant is per se unreasonable: (1) the affiant misled the judge by including information in the affidavit that the affiant knew was false or would have known was false, except for a reckless disregard for the truth; (2) no reasonably well-trained officer could rely on the warrant, as it was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; (3) the judge wholly abandoned his neutral and detached position and acted as a rubber stamp; or (4) the warrant itself is so facially defective that the executing officer cannot presume its validity. See United States v. Leon, 468 U.S. 897, 922-23 (1984).

The "exceptions" to good faith reliance do not apply in this case. No evidence was presented to suggest that the issuing judge was misled by information in the affidavit that the affiant knew to be false or would have known to be false, except for a reckless disregard for the truth. No evidence was presented to suggest that the judge abandoned a neutral and detached position or acted as a rubber stamp. Further, the Court cannot find that the affidavit was so lacking any indicia of probable

cause or the warrant so facially defective that the executing officers could not presume the warrant's validity.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant's Motion to Suppress Evidence (doc #29).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                        */s/ Sarah W. Hays*
                                            SARAH W. HAYS
                               UNITED STATES MAGISTRATE JUDGE